## MARSHALL v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. April 18, 1912. On Rehearing, May 13, 1912. On Motion to Reopen Case and That the Question Involved be Certified to the Supreme Court, May 24, 1912.)

### No. 144.

**1.** CRIMINAL LAW (§ 619*)—USE OF MAILS TO DEFRAUD—CONSOLIDATION OF INDICTMENTS.

Rev. St. § 1024 (U. S. Comp. St. 1901, p. 720) authorizes the consolidation for trial of indictments under Rev. St. § 5480 (U. S. Comp. St. 1901, p. 3696), charging separate offenses by using the mails in carrying out the same scheme to defraud.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1376; Dec. Dig. § 619.*

Consolidation of and trial of indictments together, see note to Dolan v. United States, 69 C. C. A. 287.]

**2.** CRIMINAL LAW (§ 789*) — INSTRUCTIONS — DEFINITION OF "REASONABLE DOUBT."

An instruction in a criminal case that "by the term reasonable doubt is meant not a capricious doubt, but a substantial doubt—a doubt that you can give a reason for if the court called on you to give one," *held* not erroneous.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1846–1849, 1851, 1880, 1904–1922, 1960, 1967; Dec. Dig. § 789.*

For other definitions, see Words and Phrases, vol. 7, pp. 5958–5972; vol. 8, p. 7779.]

**3.** CRIMINAL LAW (§ 369*)—EVIDENCE—PROOF OF OTHER OFFENSES.

On the trial of an indictment for using the mails to defraud in conducting the business of a society named in the indictment and alleged to be a fraudulent organization, it was error to admit testimony showing that defendant was also at the same time conducting another society of precisely the same kind by identical methods which was not mentioned in the indictment.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 822–824; Dec. Dig. § 369.*]

**4.** CRIMINAL LAW (§ 417*)—EVIDENCE—COMPETENCY.

On cross-examination of a witness for a defendant charged with conducting a fraudulent organization or society by the use of the mails, the witness having been the secretary of such society, of which defendant was president, it was error to permit the introduction, ostensibly for impeaching purposes, of letters written by witness to defendant, as president, which were not answered, containing intimations that the business was conducted by dishonest methods, and especially where such letters were not pertinent to any matter testified to on his direct examination.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 950–967; Dec. Dig. § 417.*]

### On Rehearing.

**5.** CRIMINAL LAW (§ 371*)—EVIDENCE—COMPETENCY—PROOF OF OTHER OFFENSES.

The rule which excludes evidence of the commission of other similar offenses by a defendant charged with crime is subject to exception only where a guilty intent must be shown as a separate element of the of-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

fense charged, to meet the presumption of accident or mistake, and the exception should not be extended.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 830–832; Dec. Dig. § 371.*]

In Error to the Circuit Court of the United States for the Southern District of New York.

Criminal prosecution by the United States against A. Gero Marshall. Judgment of conviction, and defendant brings error. Reversed.

On writ of error to the Circuit Court for the Southern District of New York to review a judgment of conviction entered upon the verdict of a jury finding the defendant guilty under section 5480 of the U. S. Revised Statutes (U. S. Comp. St. 1901, p. 3696). He was sentenced to be imprisoned for a term of one year and to pay a fine of $500. The parties will be referred to hereinafter as they appear in the Circuit Court, viz., as plaintiff and defendant.

John J. Lordan and John M. Coleman, for plaintiff in error.
Henry A. Wise, U. S. Atty. (Daniel Day Walton, Jr., Asst. U. S. Atty., and G. H. Dorr, of counsel), for the United States.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge. Two indictments were found against the defendant under section 5480 of the Revised Statutes, as amended by the Act of March 2, 1889, c. 393, 25 Stat. 873 (U. S. Comp. St. 1901, p. 3696), for having devised a scheme to defraud and using the United States mail in furtherance thereof.

These indictments were consolidated under section 1024 of the Revised Statutes (U. S. Comp. St. 1901, p. 720). The defendant was found guilty under the second and third counts of each indictment. The second count of the first indictment charges the defendant with having devised a scheme to defraud one Wursthorne and others by inducing them to join the Standard Protective Society, alleged to be a fraudulent organization, and by mailing to said Wursthorne on May 15, 1909, a postal card intended to carry out said scheme. The third count is identical with the second, except that it charges the mailing of a different letter to said Wursthorne on June 21, 1909.

The second and third counts of the second indictment describe the same scheme in somewhat different language, and allege the mailing of two letters upon March 11 and March 19, 1909, respectively, in furtherance of the said scheme.

[1] There was no error in consolidating the indictments. Booth v. United States, 154 Fed. 836, 83 C. C. A. 552.

[2] There was no error in charging the jury that "by the term reasonable doubt is meant not a capricious doubt, but a substantial doubt—a doubt that you can give a reason for if the court called on you to give one." The definition of "reasonable doubt" as being a doubt for which a reason can be given is frequently adopted by trial judges. The criticism that the charge carried with it an implied threat that the jury might be called upon to explain to the court the reasons which in-

duced them to acquit if they found a verdict of not guilty, is hypercritical.

[3] We think that there was error in admitting testimony showing the defendant's relations to the Bankers' Protective Society. The indictments were not based upon any misdoing in connection with this society, and nothing therein notified the defendant that he was called upon to defend himself against charges of fraud based upon his management of the Bankers' Society. The brief of the U. S. Attorney states that:

"The two schemes were identical in all respects, except that the Bankers' scheme was on a smaller scale. The financial history of the two societies disclosed precisely the same conduct by the defendant. In point of time, furthermore, they were being operated simultaneously, and from the same office and through the same employés. * * * Every allegation in the indictments respecting the Standard Society could have been made with equal truth and appropriateness regarding the Bankers' Society."

It is urged that the testimony was admissible upon the question of intent; but it is difficult to perceive how the repetition of identical facts can have any legitimate bearing upon this question. If the evidence as to the Standard Society showed a fraudulent intent, the Government's case in that regard was established; nothing more was needed. If, on the other hand, it failed to show fraudulent intent, how was the omission supplied by duplicating the testimony under a different name? A lawful act does not become unlawful because it is repeated. If an act be shown to be illegal, it is enough. The prosecutor may safely rest on such proof; it does not add to its illegal character to show that it was repeated. If the contention of the Government be correct, the acts of the defendant in relation to the Bankers' Company constitute an offense under section 5480 and he had a right to rely upon the rule that he would not be called upon to answer accusations not found in the indictment. It is impossible to say how much of this evidence may have prejudiced the jury.

The court charged that the testimony should only be considered in case the jury entertained a doubt as to whether the defendant intended to violate the statute.

"In that event" (said the court) "you may have recourse to this alleged similar transaction, with a view of satisfying your minds that this plan and device was culpable, and comes within the purview of the statute."

In addition to the Bankers' Society, the Government offered to prove two other fraudulent schemes, but the court, evidently thinking that sufficient latitude had been given, excluded the testimony.

The testimony received was to the effect that a transaction, identical in all material respects, had been carried on synchronously with the transaction for which the defendant was indicted. The Bankers' transaction could not, in our opinion, be used legitimately to establish intent to defraud in the Standard transaction, the two schemes being concededly the same. It did not tend to prove the guilty intent of the defendant as to the scheme in controversy to show that he had operated it before. We are not persuaded that the rule enunciated in Colt v.

United States, 190 Fed. 305, 111 C. C. A. 205, should be applied to the facts in the case at bar.

[4] Two letters signed, respectively, H. W. Williams and W. Williams, addressed to the defendant, were received in evidence over defendant's objection and exception and were marked Exhibits 180 and 182. Williams was Secretary and Treasurer of the Standard Society, and was sworn as a witness for the defendant, and on cross-examination these letters were received in evidence.

The first letter, which is undated, is a complaint that there is a mistake in the writer's account, and contains a statement that he has to fight for his money. The letter further says: "It does not appear to me that the Standard will meet its demands any way."

The second letter also contains various complaints and expressions of opinion, among them the following:

"I do not care to have my name mixed up and am going to withdraw order given to Miss Gatlin about using that rubber stamp. * * * When things moved on the square I did not mind, but they are not at present, and I do not intend you shall do just as you please. * * * What you will have to do is to let me know what you are doing, or I will turn my resignation over to the hands of my lawyer, also my back salary account, and let him find out about same. You know you are on the ground, and you are going to protect yourself, and the dickens with the other fellow. This thing taking chances for glory does not pay. I will wait till Wednesday."

These letters are evidently written by a person who is angry because his salary has not been paid, and who is endeavoring to enforce his demand by threats and insinuations. The defendant never answered these letters.

The U. S. Attorney makes an able and elaborate effort to defend their introduction, his argument, in this regard, covering twenty-five printed pages of his brief. The brief contains the following frank statement of the law:

"In an ordinary criminal case, it is axiomatic that what a witness other than the defendant knew or thought about the matter alleged to be criminal, is immaterial and inadmissible for any purpose.

"But in this case Marshall's representation and whole defense was that the society was conducted by honest, reputable men. trying in good faith to conduct a society under conditions that proved adverse."

Surely the jury would be likely to draw the inference that the society was not being conducted by honest, reputable men when they have before them a letter addressed to the president intimating that business was conducted by dishonest methods, which letter the president never answered, and thereby impliedly admitted. It is not pretended that the letters could be used for this purpose, but only for the purpose of impeaching Williams. But the record shows that they were not needed for this purpose; this is admitted by the U. S. Attorney. He says:

"It is to be carefully noted also that before the letters in question were offered in evidence, the witness, without objection from the defendant, had testified that he had made the damaging statements. He, therefore, had already been impeached by his own testimony before the letters were offered."

Why, then, were the letters necessary? With the letters before them, the jury could hardly fail to draw the inference that Marshall

had been charged in writing with dishonest and fraudulent practices by his own secretary, and had remained dumb under the accusation. Furthermore, the witness Williams had been called by the defense for the purpose of identifying the minutes of the society and to prove that no objection was made at these meetings to the accounts presented by the defendant. It was legitimate upon cross-examination to interrogate the witness upon any subject regarding which he had been examined on his direct; as to other matters, the District Attorney made him his own witness, and should not have been permitted to impeach him. An examination of the extracts above quoted makes it clear that the letters do not impeach anything which the witness said upon his direct examination. In no view of the case were the letters admissible.

We have no doubt that the errors pointed out were prejudicial to the defendant. With the objectionable testimony eliminated, the jury might have reached a different conclusion.

The judgment is reversed.

### On Rehearing.

PER CURIAM. The decision of the court is, of course, based upon the facts in the case in hand, and cannot apply to other cases based upon different facts. The question here was whether the defendant had devised a scheme to defraud and had used the United States mails in furtherance thereof.

[5] In order to prove guilty intent the government introduced testimony showing defendant's connection with another similar scheme. The admission of such testimony is an exception to the general rule. It is allowed, where a guilty intent must be shown, to meet the presumption of accident or mistake. Such is the case of passing counterfeit money, or of filing undervaluing invoices "with intent to evade" the customs law, or of making false representations "with intent" to obtain property thereby. When the government has proved that the defendant has passed a counterfeit coin, or has filed an undervaluing invoice, or has made false representations, the case is not fully made out. Every one of these things might be done innocently in one instance, but hardly in many instances. The exception ought not to be extended. Such testimony certainly prejudices the defendant even if the court charges the jury that it is admitted only to show intent. It is not needed in the case of a scheme to defraud. It would be impossible to find the existence of a scheme to defraud without finding also the fraudulent intent of the person who devised it. The moment the fraudulent scheme is established, there is no necessity for resorting to other transactions as in the excepted cases mentioned. No one can have an innocent intent in devising a fraudulent scheme.

The petition for a rehearing is denied.

### On Motion to Reopen Case and That the Question Involved be Certified to the Supreme Court.

PER CURIAM. As we are not in doubt about our conclusion, and think the government authorized to apply for a writ of certiorari to the Supreme Court, the motion that the cause be reheard and the question certified is denied.