UNITED STATES v. MURPHY et al.

(District Court, N. D. New York. July 26, 1918.)

1. CRIMINAL LAW ⟨⟩⟷511(2)—ACCOMPLICE TESTIMONY—CORROBORATION—"CORROBORATING EVIDENCE."

"Corroborating evidence" is evidence which is independent of the testimony of the accomplice, and, taken by itself, leads to the inference, not only that a crime has been committed, but that the person charged was implicated therein, etc.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Corroborating Evidence.]

2. CRIMINAL LAW ⟨⟩⟷510—ACCOMPLICE TESTIMONY—CORROBORATION.

It is the better practice to require corroborating testimony before giving credence to the testimony of an accomplice.

3. CRIMINAL LAW ⟨⟩⟷780(1)—INSTRUCTIONS—ACCOMPLICE TESTIMONY.

Cautionary instruction that it is the better practice to require corroborating testimony before giving credence to the testimony of an accomplice is proper.

4. CRIMINAL LAW ⟨⟩⟷1192—SECOND TRIAL—FOLLOWING DECISION OF APPELLATE COURT.

Where, on a second trial, after reversal of a conviction, the evidence was different, and the testimony of an accomplice, on which the prosecution relied, was much shaken, the trial court is not bound to follow the decision of the appellate court on a former trial, to the effect that the jury's findings were conclusive.

5. CRIMINAL LAW ⟨⟩⟷742(2)—SUBMISSION TO JURY—ACCOMPLICE TESTIMONY.

Where the only evidence on which a conviction could be sustained was the testimony of an accomplice, and he left the stand a thoroughly discredited witness, the case should not be submitted to the jury, even laying aside the fact that the prosecution relied on accomplice testimony.

6. CRIMINAL LAW ⟨⟩⟷308—PRESUMPTION OF INNOCENCE.

The presumption of innocence remains with defendants throughout the entire trial, and so letters written by defendants and relied on by the prosecution are presumed, in the first instance, to be innocent.

7. CRIMINAL LAW ⟨⟩⟷753(2)—DIRECTED VERDICT FOR DEFENDANT.

Where the evidence as a whole produced by the prosecution is consistent with innocence, and does not lead irresistibly beyond a reasonable doubt to a conclusion of guilt, a verdict should be directed for defendant.

8. CRIMINAL LAW ⟨⟩⟷742(3)—TRIAL—CORROBORATION OF WITNESS.

Whether a discredited witness, on whom the prosecution relied, is sufficiently corroborated to take the case to the jury, is a question of law.

Richard Murphy, Baron Eugene Francois Ernest Oppenheim, and Howard J. Rogers were indicted for crime. On motion to direct a verdict of acquittal in favor of Oppenheim and Rogers. Motion granted.

See, also, 224 Fed. 554; 226 Fed. 512; 241 Fed. 625, 154 C. C. A. 383.

⟨⟩⟷For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Edward Hymes, of New York City, for the motion.

Frank J. Cregg, Asst. U. S. Dist. Atty., of Syracuse, N. Y., opposed.

THOMAS, District Judge. The argument in support of this motion is based upon two substantial grounds, as reasons in law why it should be granted: (1) That Brice, a conceded accomplice, must be corroborated, even if not discredited. (2) That Brice, confessedly an accomplice, cannot be corroborated, if discredited, on the ground that then there would be nothing to corroborate.

[1-3] In support of the first contention cases are cited by counsel for defendants as against which the district attorney urges that the rule respecting the corroboration ,of an accomplice in this circuit, at least, is to be found in Hanley v. United States, 123 Fed. at page 850, 59 C. C. A. 153, decided in 1901, where Judge Lacombe says:

"It is * * * argued that the court erred in refusing to charge that the testimony of William A. Clark, he being a self-confessed accomplice, must be corroborated as to some of the material facts. The statutes of New York do not permit conviction in the courts of that state on the uncorroborated testimony of an accomplice. Those statutes, however, do not regulate proceedings in the federal courts, there is no similar federal statute, and in the courts of the United States the rules of law governing the reception and consideration of the testimony of accomplices are those of the common law. Upon this branch of the case the court called attention to the fact that the New York statute did not apply."

Reliance is also placed upon a subsequent decision of the Circuit Court of Appeals for this circuit, found in Ahearn v. United States, 158 Fed. 607, 85 C. C. A. 428, decided in 1907, when Judge Lacombe, speaking for the court, said:

"The court charged the jury as to the weight to be given to the testimony of an accomplice, as to felonious intent, and as to the presumption of innocence. The testimony of the accomplice was corroborated as to several material facts, although corroboration is not essential in the federal courts and could not have been withdrawn from the jury. It was for them to say what weight should be given to it."

Likewise reference is made to Richardson v. United States, 181 Fed. 9, 104 C. C. A. 69, decided August 22, 1910. There it was denied by the government that the persons whom it was sought to charge as accomplices were in any sense accomplices, and the court was asked to charge the jury that if these witnesses were accomplices their testimony was not to be regarded, unless corroborated by unimpeachable testimony in some material point, and while the court said that there was nothing which forbids the conviction of a defendant, at common law or in a federal court, on the uncorroborated testimony of an accomplice, yet it held that there is a well-established practice, sanctioned by long practice and judicial approbation, to caution juries about accepting the evidence of an accomplice without material corroboration, coming as it does from a polluted source. Then the court cites Holmgren v. United States, 217 U. S. 509, 30 Sup. Ct. 588, 54 L. Ed. 861, 19 Ann. Cas. 778, which was decided May 16, 1910, about two months before the Richardson Case. In 217 U. S. at pages 523 and 524, 30 Sup. Ct. at pages 588, 592 (54 L. Ed. 861, 19 Ann. Cas. 778), Mr. Justice Day says respecting this subject-matter:

"It·is undoubtedly the better practice for courts to caution juries against too much reliance upon the testimony of accomplices, *and to require corroborating testimony before giving credence to them.*"

If that rule is to be followed, corroborating evidence is evidence which is independent of the evidence of an accomplice, and which, taken by itself, leads to the inference, not only that a crime has been committed, but that the person on trial was implicated in it; or it must be evidence which corroborates as to some material fact or facts which go to prove that the person on trial was connected with the crime. With this as apparently the last word of the Supreme Court upon the subject, we may safely say it is the correct expression of the rule applicable here. Nor do I understand that this rule is in any way a violation of the decisions found in Gretsch v. United States, 242 Fed. 898, 155 C. C. A. 485, Fischer v. United States (D. C.) 245 Fed. 479, and Erber v. United States, 234 Fed. 225, 148 C. C. A. 123.

In this connection I direct attention to the fact that a careful reading of the cases upon this subject which we have been discussing does not hold, as contended for by counsel, that corroboration of an accomplice is not necessary, but they do hold that a conviction may be had without corroboration. A distinct difference. The principles enunciated in these decisions unquestionably apply to the testimony of an accomplice who has testified in a case and leaves the witness stand unimpeached. The Supreme Court, in such instances, as declared in the Holmgren Case, supra, holds that a trial court should caution juries against too much reliance upon the testimony of an accomplice and to require corroborating testimony before giving credence to such evidence. But I fear we have all devoted too much time to the consideration of these principles concerning which there can be little dispute.

[4] The learned district attorney urges upon the court and relies upon an extract from the opinion of the Circuit Court of Appeals on the appeal from the former judgment as an additional reason for the denial of this motion and directs the court's attention to the following passage found on page 627 of 241 Fed. (154 C. C. A. 383), in Judge Ward's opinion:

"The jury's findings of fact are binding upon us when there is any evidence to support them, and we think there was evidence both as to the conspiracy count and the aiding and abetting counts"

—and further quotation from that part of the opinion of Judge Hough, dissenting from the majority of the court upon other grounds, upon which a reversal was granted. If this court had the same record as confronted the Circuit Court of Appeals, this motion would receive no serious consideration.

The records in the two cases, so far at least as the testimony of Brice is concerned, are entirely different. It is impossible to predicate a conclusion upon the record of the former trial, and urge *that* as the basis for a conclusion to be formed upon the record of this trial. In the former trial the testimony of Brice stood practically unchallenged. I have examined it, and, when the cross-examination was concluded, Brice had emphasized his direct testimony, and there were few contra-

dictions and few inconsistencies, and such as existed were on unimportant matters.

These facts must be known to counsel who now urge upon the court that the opinion of the Circuit Court of Appeals reversing the former trial binds this court. So it is sufficient to say, as to this, that the Circuit Court of Appeals did not have this record before it for consideration, and it follows that the citation read has no force, no effect, and could have none; and while I yield to no one in having a greater regard for the opinion of our appellate court, I cannot be mistaken in saying that even that learned tribunal would not expect me to follow the conclusion there expressed, upon the record here.

[5-8] But even assuming that the first proposition or reason for granting this motion is not sound in law, and that no corroboration is necessary of an accomplice whose cross-examination leaves him a credible witness, we pass to the second proposition: But the serious question here under consideration is whether, if Brice, an accomplice, leaves the stand a thoroughly discredited witness upon many material points, it can be claimed that, in spite of that fact, there is any testimony here, aside from Brice, which connects Rogers and Oppenheim with the crimes charged, sufficient to submit the case to the jury. Where the government's case hinges largely upon the testimony of a confessed thief, who concededly might be an honest witness, *but who has here time and time again evaded, whose testimony was at times absurd, inconsistent and full of falsehoods, and who when confronted with the facts which pinned him upon either horn of a particular dilemma then confronting him failed to answer, and who on his own statement was torn apart, and of whom it is charitable to say falsified,* can it be that such evidence is sufficient legal evidence to go to a jury?

Leaving out the question of an accomplice, would a court not be justified—yes, required—to take such a case away from a jury, if the witness relied upon to substantiate the main parts of a case were simply a discredited witness and not a discredited accomplice as here. It needs the citation of no authority to sustain the proposition. It is not, as counsel contend, a question of corroboration of what we might call a good accomplice—good in the sense that he made what is commonly called a good witness, frank, open, truthful, such as would impress a trier of a question of fact, by his answers and his demeanor, that he spoke the truth. *But the case here is where we have a bad accomplice, who by his answers not only evaded and equivocated, who was utterly devoid of the sanctity of his oath, but who over and over again falsified upon material matters seeking to connect the defendants Rogers and Oppenheim, and without whose testimony there is nothing.*

In order to support the claims of the government connecting the defendants Rogers and Oppenheim with criminal participation, the testimony of Brice is indispensable; for all of the acts done and conversations had must be linked with Brice's version of what took place and what was said in order to submit the case to the jury. And, but for the demonstrated untruthfulness of Brice upon all material questions, there would be sufficient evidence to make it necessary that the defendants explain. Nor must we lose sight of the presumption of

innocence which remains with these defendants throughout the trial. *Brice endeavored to remove that presumption, and that was the main purpose of his testimony; yet; as I view it, his testimony was of such a character as·to be unbelievable—shattered, as expressed by counsel—* so that all the letters, all the inferences in the letters, by virtue of the presumption of innocence, are presumed to have been innocent, and there is no other evidence to prove they were not.

It is announced by our Circuit Court of Appeals that where the evidence as a whole produced by the prosecution is consistent with the innocence of the accused and does not lead irresistibly beyond a reasonable doubt to a conclusion of guilt, then and in that event no question is presented for the jury, and it is the duty of the trial court to direct a verdict. In the case of Union Pacific Coal Co. v. United States, 173 Fed. 737, at page 740 (97 C. C. A. 578), the court said:

"There was a legal presumption that each of the defendants was innocent until he was proved to be guilty beyond a reasonable doubt. The burden was upon the government to make this proof, and evidence of facts that are as consistent with innocence as with guilt is insufficient· to sustain a conviction. Unless there is substantial evidence of facts which exclude every other hypothesis but that of guilt, it is the duty of the trial court to instruct the jury to return a verdict for the accused; and where all the substantial evidence is as consistent with innocence as with guilt, it is the duty of the appellate court to reverse a judgment of conviction."

In Hayes v. United States, 169 Fed. 101, at page 103 (94 C. C. A. 449), the court said:

"While evidence to convict of crime, may be circumstantial and inferential in its character, it must always rise to that degree of convincing power which satisfies the mind beyond a reasonable doubt of guilt. This can never be the case when the evidence as produced is entirely consistent with innocence in a given transaction."

In the case at bar, without Brice, the sole question is: What inference will one draw from the statements contained in all the letters? They may be innocent, they may be sinister; but no trier of a criminal cause may be allowed to guess. The various transactions which the learned district attorney urges with so much vehemence as supporting his contention that he has Brice, an accomplice, corroborated, may be illustrated by a single transaction. Take the July 5, 1911, incident as illustration. His claim is that Brice is corroborated regarding the facts of the transaction, even though he be a discredited witness.

Oppenheim, he claims, was in Amsterdam; that he got $700; that the express receipt for $550, sent to Rogers, leaves no room to question the transaction. This is very likely true thus far; but to show criminal knowledge Brice is necessary, and he supports the claim that there was criminal knowledge by saying that he told Oppenheim that he would have to steal the money from the bank, and that Oppenheim said, "All right, steal it." Without discussing the probability or improbability of this story, because that is not the purpose of this discussion, but for the purpose of illustrating the point, eliminate the conversation between Brice and Oppenheim and what have we of the structure left? That Oppenheim was in Amsterdam and that he sent

$550 by telegraph to Rogers. Nothing appears but what the transaction was legitimate, and, if it were argued, it might well be claimed that Oppenheim, knowing he had a legitimate contract with Brice which called for certain money, and needing the money hurriedly took the train to Amsterdam, got it, and telegraphed it to Rogers. In the light of the familiar rule of law regarding the presumption of innocence, is not the inference suggested from the facts outlined equally as fair as the sinister one that he was in a crooked deal?

So it appears conclusively that Brice must be credible to support the sinister conclusion, and one must believe his version of the conversation had. Nor is this a question of fact for a jury to pass upon. It raises a question of law. So, too, as to all the transactions. Brice must be credible in order to give life and substance to the claim that all defendants knew Brice was stealing from the bank, for they involve his own relation of conversations, and without it the government's case falls.

This one illustration will have to serve to illustrate the various points raised and urged by the learned district attorney. He cannot, nor can any one associated with him, be blamed for the situation in which they find themselves, for, naturally, they could not control the evidence of Brice, nor could they prevent him from continually falsifying upon the witness stand. *It is inconceivable to me that a man who was honestly endeavoring to tell the truth concerning these many transactions could have presented such a hopeless and pitiable object. Brice, as I view it, is, so to speak, not in the case.* Without his truthful, or semblance of truthful, statements regarding all these various transactions, there is nothing to submit to the jury. *If there ever was a case where there was a complete application of the maxim "falsus in uno falsus in omnibus," it is right here.* This being the legal situation confronting us, it is inconceivable to me that this motion should be denied. The law compels me to grant such a motion, and I consider the application of the rule in the Sykes Case, 204 Fed. 909, 123 C. C. A. 205, apposite to the instant case. There the court said:

"And the conclusion is that the uncorroborated testimony of the confessed perpetrator of a crime, contradicted under oath by herself, contradicted by other witnesses, and inspired by the hope of immunity from punishment, which in this case has since turned to glad fruition, that another was an instigator or participator in the perpetration of her crime, is not only insufficient to establish his guilt beyond a reasonable doubt, but that it presents no substantial evidence of it."

In other words, that if Brice is in the same situation as the witness referred to there, or substantially in that position, then this testimony does not give us any substantial evidence of what it seeks to relate. So, too, in the Mickel Case, 157 Fed. 229, 84 C. C. A. 672, the court said:

"The evidence in every criminal case should be sufficient to warrant a reasonable conclusion of the defendant's guilt; otherwise, it is the duty of the court to instruct a verdict in his favor. * * * We have carefully read all of the testimony submitted, and are of the opinion that the most that can be said for it is that possibly it might raise a conjecture or suspicion unfavorable to the defendant. But evidence only sufficient for this purpose

is not legal evidence, for the jury must be governed by the evidence of facts upon which the suspicion is based, not by the suspicion itself."

So, too, the Union Pacific Coal Case is now instructive, and it is not now necessary for me to read what the court said there, as I have already adverted to it. So, if the rule in the Holmgren Case be applied, all the more so is the conclusion here reached irresistible. Nor are the views herein expressed, or the conclusion reached, violative of any of the principles enunciated in the cases cited by counsel for the government and upon which reliance is placed, viz.: Caminetti v. United States, 242 U. S. 495, 37 Sup. Ct. 192, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168; Burton v. United States, 202 U. S. 373, 26 Sup. Ct. 688, 50 L. Ed. 1057, 6 Ann. Cas. 392; Hoke v. United States, 227 U. S. 324, 33 Sup. Ct. 281, 57 L. Ed. 523, 43 L. R. A. (N. S.) 906, Ann. Cas. 1913E, 905.

The motion as to Rogers and Oppenheim is granted, and, as there is other evidence independent of Brice as to Murphy, the motion is denied as to him.

Mr. Cregg: Exception.

The Court: Mr. Marshal call the jury.

(The jury returned at this point.)

The Court: Gentlemen of the jury, I excused you for the purpose of hearing argument on a motion. That motion was based upon propositions of law, and, because that is of no concern to you, you were excused. As the result of the argument and deliberations, the motion has been granted. The motion that was made was that the court direct a verdict of acquittal for the defendants Rogers and Oppenheim, and, as I say, after the argument and deliberations, I have granted the motion. You therefore will report a verdict of not guilty, so far as Rogers and Oppenheim are concerned.

(Jury return a verdict of not guilty as to defendants Oppenheim and Rogers.)

Mr. Hymes: Your honor, I move to have the defendants Rogers and Oppenheim discharged and their sureties released.

The Court: So ordered.