## CRINNIAN v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. July 2, 1924.)

No. 4006.

1. **Bribery** ⊙⟶6(1)—**Indictment for accepting bribe as federal officer or agent held sufficient.**

An allegation in an indictment for accepting a bribe under Criminal Code, § 117 (Comp. St. § 10287), that defendant was a "federal prohibition agent" is a sufficient allegation that he was within the terms of the statute as "a person acting for or on behalf of the United States in any official capacity under or by virtue of the authority of any department or office of the government thereof."

2. **Criminal law** ⊙⟶369(1)—**Evidence of prior offense held inadmissible, when intent not in issue.**

Where there is no question of prohibition officer's intent in taking bribe, but the only issue is whether or not he solicited and took it, on which the testimony is in direct conflict, evidence of a prior violation of the prohibition law by defendant is irrelevant and inadmissible.

3. **Criminal law** ⊙⟶369(1)—**Evidence of offer to procure liquor held inadmissible in prosecution for accepting bribe.**

In a prosecution of a prohibition agent for accepting a bribe, evidence that on a previous occasion he offered to aid a person in obtaining liquor was inadmissible, as compelling defendant to rest under the imputation of having a criminal intent, or of trying out the collateral issue as to whether or not his former action was in the legitimate performance of his official duties.

4. **Criminal law** ⊙⟶655(1)—**Compelling witness who claimed privilege to leave the stand and courtroom held error.**

The action of the court in requiring a witness, who on cross-examination refused to answer questions on the ground that it might incriminate him, to leave the stand and courtroom, *held* error.

In Error to the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Criminal prosecution by the United States against Robert L. Crinnian. Judgment of conviction, and defendant brings error. Reversed and remanded.

Robert T. Speed, of Detroit, Mich., for plaintiff in error.

Frederic L. Eaton, Asst. U. S. Atty, of Detroit, Mich. (Delos G. Smith, U. S. Atty., of Detroit, Mich., on the brief), for the United States.

Before DENISON, MACK, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge. Crinnian was a prohibition agent. He was indicted and convicted for soliciting and accepting a bribe in violation of section 117 of the Criminal Code (Comp. St. § 10287). It appears without dispute that Stinson and his wife

were operating a hotel and drinking place in Wyandotte, near Detroit; that Crinnian and others repeatedly purchased intoxicating liquor there; that on the occasion in question, and as Crinnian came out from a private room, where he had been with Stinson, a $20 bill was picked up from the floor near him. It is the claim of Mr. and Mrs. Stinson that Crinnian had been soliciting a bribe as a condition of not prosecuting them; that they paid him this money after they had duly set the scenery, so that they could get sufficient evidence against him; and that the bill was thrown by him from his pocket as he saw he was about to be 'arrested. It is his claim that the whole occurrence was a "frame-up," for the purpose of deterring him and other prohibition agents from too much activity; that his cultivation of their acquaintance and his private talks with them had been for the purpose of getting "tips" on liquor selling; and that the $20 bill had either been surreptitiously put in his pocket by Stinson, or else never in fact had been in the pocket. As these conflicting claims are decided, Crinnian was guilty or innocent.

In this court the indictment is attacked because it does not sufficiently show that Crinnian was one of the persons specified in section 117 as being subject to bribery. The indictment charges that the defendant, "who was then and there an officer and employe of the United States, to wit, a federal prohibition agent, stationed at Detroit and acting under the direct control and orders of James R. Davis, federal prohibition director for the state of Michigan, did then and there unlawfully, willfully, feloniously, fraudulently, and knowingly ask for a certain large sum of money, to wit, $25, with the intent to have his decision and action on certain questions, matters, causes, and proceedings, which might be brought before him in his official capacity as a prohibition enforcement agent, influenced thereby."

[1] Plaintiff in error relies upon the recent decision of the Circuit Court of Appeals of the Second Circuit, in Heaton v. U. S., 280 Fed. 697, to the effect that there are no such officers or employes known to the law as "federal prohibition agents," and that hence, in the absence of any allegation that Crinnian was acting "under or by authority of any department or office of the government," there could be no conviction. The case cited seems to support the contention of plaintiff in error, but we cannot be content to take the same view which that court took. The question is new in this court. In Rembrandt v. U. S., 281 Fed. 122, 124, we sustained an indictment under this section, but there was, an express allegation that the person receiving the bribe, and called a prohibition agent, was "acting by authority of a department of the government." In Browne v. U. S. (C. C. A.) 290 Fed. 870, we took judicial notice of a situation not prescribed by statute, through which various agents represented the Secretary of War, and we considered one of them as within section 117; but the point now raised was not involved or considered.

It is true, as said by the Second Circuit Court of Appeals, that neither the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), nor any other statute, creates or provides for, or recognizes, by that name, prohibition agents, except as "agents and inspectors in the field service" are named in title 2, § 38; but that is not the end of the inquiry. The statute confides its enforcement to the Commissioner of Internal Revenue, and it provides (sections 1 [7] and 28) that the enforcement shall be, under regulations to be adopted by the Commissioner, through assistants and agents to be appointed by him. The general system which was thereupon adopted by the Commissioner, and has now been in force and operation throughout the country for several years is universally known, and we think we should take judicial notice of it. The Commissioner of Internal Revenue has delegated the general execution of the act to an assistant, officially called the federal prohibition commissioner. He has appointed in each state a prohibition director for that state; under the prohibition commissioner or the state prohibition director are supervising agents, or "agents in charge" of a smaller district; and the immediate execution throughout the country is carried on by field agents, known simply as "prohibition agents." Regulation 60, first issued shortly after the passage of the National Prohibition Act, signed by the federal prohibition director and the Commissioner of Internal Revenue, and approved by the Secretary of the Treasury (of which we have several times taken notice), plainly contemplates in many ways (sections 1 [d], 1 [c], 7, 8, 9, 13 [b], 96) the existence of the system of enforcement just described, although it does not expressly create the different official positions. This regulation has been frequently amended or added to by later ones, constantly recognizing the existence of this system and its component parts. For example, regulation 285, dated August 16,

1922, signed by the Commissioner of Internal Revenue, is directed to "the prohibition commissioner, his assistants and agents." It provides a practice for revocation by the federal prohibition commissioner, or any assistants or agents designated by him, of permits which have been granted. Regulation 289, dated August 28, 1922, is upon the same general subject. It makes reference to and points out the duties in this practice of "all prohibition directors and other prohibition officers," "state prohibition directors in the several states" "an assistant director," a "divisional chief of general prohibition agents, or other prohibition officers," "a prohibition director within whose jurisdiction the alleged violation was committed," "the prohibition commissioner, Washington, D. C.," "the director in the district where the hearing was held." This regulation is signed by the prohibition commissioner, but is approved by the Commissioner of Internal Revenue.

We observe, also, and we think it a proper subject of judicial notice, that, under the imprint of the Government Printing Office, in 1921, and carrying on its title page, "Treasury Department, Bureau of Internal Revenue, Office of Federal Prohibition Commissioner," there was published a 70-page pamphlet entitled "Organization and Procedure, Office of Federal Prohibition Director." This pamphlet prescribes in detail the organization of the system in each state or main district, from the federal prohibition director down through the system, including the agents in charge and the group heads, to the field agents. It gives (page 3) to the federal prohibition director "supervision and direction of the clerical force and of the field force," the latter consisting of officers designated "prohibition agents." On page 12 it says: "Prohibition Agents. These officers constitute the field force, acting under the supervision and direction of the federal prohibition director. * * * They are charged with the duty of making arrests and seizures in accordance with the provisions of the National Prohibition Act and regulations issued thereunder." It is true that this pamphlet of regulations is signed only by the prohibition commissioner. We have not had the benefit of search by counsel to ascertain whether it has ever been expressly approved by the Commissioner of Internal Revenue; but in the absence of proof to the contrary, and in view of the universal recognition and operation of this system for several years, we think that any requisite approval should be assumed to exist.

We conclude that the allegation in the indictment, that Crinnian was "a federal prohibition agent" was a sufficient allegation that he was at least "a person acting for and on behalf of the United States in any official capacity under or by virtue of the authority of any department or office of the government thereof." Count 1 of the indictment must be considered good. While the verdict indicates that conviction was also under counts 2 and 3, the bill of exceptions shows that count 1 only was submitted. Any question as to count 2 or count 3 has therefore become immaterial.

[2] Testimony was received to the effect that some weeks before the time in question, and considerably before Crinnian had been appointed prohibition agent, he had been engaged in, or promoting, transactions involving violations of the National Prohibition Act. These transactions were primarily at Chicago, but had led him to Stinson's place at Wyandotte. Objection was made to this proof, because it was directed to another offense than the one charged; but it was received on the theory that it bore upon the question of intent. Counsel for plaintiff in error is, we think, wrong in his broad claim that previous violations of the National Prohibition Act cannot ever be relevant to the matter of intent in a prosecution for soliciting a bribe under section 117 of the Criminal Code. It is quite conceivable that former conduct of a prohibition agent which involved a violation of the Prohibition Act might be closely enough connected, in time or in substance, to be relevant where the intent was controlling. Such a case might appear where an established fact permitted ambiguity as to intent, as where the taking of money by a prohibition agent might be enticing or might be detecting. There is no such issue here. Either Crinnian asked for and took the money, and is guilty, or he did neither, and is innocent. The relative credibility of Crinnian and Stinson was the issue. Proof that Crinnian had formerly violated the Prohibition Act could have no bearing on the issue, except by showing that he had the "criminal mind," and this is the very inference that the common law calls irrelevant. Marshall v. U. S. (C. C. A. 2) 197 Fed. 511, 515, 117 C. C. A. 65, certiorari denied 226 U. S. 607, 33 Sup. Ct. 112, 57 L. Ed. 379;[1] Fish v. U. S. (C. C. A. 1) 215 Fed. 544,

---

[1] This case has twice been said by the Second C. C. A. to be sui generis, and not to be extended; but we do not find that its principle of decision has ever been questioned.

550, 552, 132 C. C. A. 56, L. R. A. 1915A, 809; Erber v. U. S. (C. C. A. 2) 234 Fed. 221, 228, 148 C. C. A. 123; De Witt v. U. S. (C. C. A. 6) 291 Fed. 995, 1001. These proofs should have been excluded.

[3] Additional considerations emphasize the inadmissibility of a somewhat different class of proof. There was testimony that, with another prohibition agent, he attended a drinking party and offered to act for one of those present in aiding him to buy intoxicating liquor. It is a fact frequently appearing before us that prohibition agents are thus aiding others, or are appearing to, and are doing so with the legitimate purpose of procuring evidence against one who is habitually violating the law. In every such case, the question is whether the agent was entrapping some one into a violation that would not have occurred, or whether he was keeping within the proper bounds for detecting crime. In a case like the present one, the necessary effect of receiving this evidence was either to compel Crinnian to rest under the imputation of having that criminal mind which would make him likely to solicit a bribe, or else to try out the issue as to the true character of the previous transaction. To prevent the necessity of trying such collateral issues is one of the reasons of the rule for usually excluding such testimony; we must think, in this case, it prevails as against any possible relevancy on the question of intent. This and other similar testimony should also have been excluded.

[4] Defendant produced one Layton, who testified that, after Crinnian's arrest, both Mr. and Mrs. Stinson (who had testified for the prosecution) stated to Layton that they had "framed" Crinnian because he was too active. In cross-examination it was suggested—and perhaps may now be assumed —that Layton, pretending to furnish information to prohibition officers, was really giving "tips" to those who were to be raided. When questioned on this line, he declined to answer, upon the ground that he might incriminate himself. Thereupon the court said that he was entitled to take this position, and could not be compelled to answer, but that, if the witness could not testify without incriminating himself, he must leave the stand, and leave the room, and go home. This was plainly error. Such a refusal by a witness may or may not affect his credibility as to matters concerning

which he has testified; but that is for the jury.[2]

The matters which have been mentioned necessitate a new trial, and in view of that necessity we observe, also, that Layton's general character for morality, and that whether liquor, found by the prohibition officers at Stinson's place, in a raid just before the trial, was or was not "planted" by the officers in an effort to discredit Stinson and help Crinnian, are issues that cannot be tried in this case.

The judgment is reversed, and the case remanded for a new trial in accordance with this opinion.

---

[2] Unless title 2, § 30 (Comp. St. Ann. Supp. 1923, § 10138½q), may rightly be construed to have a meaning other than that of first impression (see U. S. v. Ernest [D. C. Mont.] 280 Fed. 515), or is invalid, the witness was not entitled to the claimed immunity.