## DE WITT v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. June 30, 1923.)

### No. 3803.

1. **Conspiracy ⬅43(6)—Indictment for conspiracy to violate National Prohibition Act held to sufficiently describe offense intended to be committed.**

   Indictment charging that defendants conspired and agreed to unlawfully and willfully violate National Prohibition Act, tit. 2, §§ 6, 10, 25, in that two of them would transport intoxicating liquor from Canada to Cleveland and there sell it to the other defendant in violation of such sections, sufficiently charged the violation of law intended without charging that the transportation was to be without a permit, without making a record, etc.

2. **Criminal law ⬅423(3)—Statement of conspirator as to destination of liquor held of such importance to plan as to be admissible as against other conspirators.**

   Where defendants conspired to violate the National Prohibition Act by transporting liquor from Canada to Cleveland and there selling it, statement of one conspirator to captain of vessel by which it was transported that it was intended for a certain club reasonably pertained to execution of conspiracy and was admissible, however broad may be

the rule that such statements to be admissible against other conspirators must be of importance to carrying out of the plan.

**3. Criminal law ⊚⟶423(4)—Statement of conspirator held admissible, though only pertinence against defendant on trial was for incompetent purpose.**

Statement of one party to conspiracy to transport and sell intoxicating liquor, that it was intended for club of which another alleged conspirator was steward, was not inadmissible because such steward was the only conspirator on trial and because it could have no pertinence against him except to show his participation, for which purpose it was not competent.

**4. Criminal law ⊚⟶1169(11)—Admitting evidence otherwise admissible on question which was immaterial held only academic error.**

If, on trial for conspiracy to violate the National Prohibition Act, evidence concerning other violations was admissible to show defendant's participation in that charged, its admission on question of intent was only academic error, though intent was immaterial.

**5. Criminal law ⊚⟶372(6)—Evidence of earlier violations of Prohibition Act held relevant on question of defendant's participation in subsequent conspiracy.**

The government's evidence tended to show that defendant purchased intoxicating liquor unlawfully brought from Canada, and ordered certain other liquor, only part of which had been delivered when vessel was seized and confiscated, and that A., learning of the unfulfilled part of defendant's order, obtained defendant's confirmation thereof, and turned it over to persons whose transportation of liquor in compliance therewith constituted basis of charge of conspiracy. *Held*, that the transactions were so connected that evidence concerning the earlier transactions was relevant on question of defendant's participation in the conspiracy, and hence not inadmissible because also tending to show other crimes.

**6. Criminal law ⊚⟶681(1)—Admission of evidence of telephone calls not erroneous where subsequent evidence rendered it admissible.**

Admission of testimony of repeated telephone calls between club at which defendant was employed, and room occupied by persons with which he was charged to have participated in earlier violations of the National Prohibition Act, was not error, where evidence subsequently admitted supported inference that they represented conversations between defendant and such persons.

**7. Criminal law ⊚⟶1172(2)—Instruction that proof of any of the overt acts charged was sufficient held not prejudicial.**

Though indictment for conspiracy charged as one overt act the entering into the unlawful conspiracy, instruction that it was sufficient for government to prove any of the three overt acts charged was not prejudicial, where all the evidence relating to overt acts was directed to other alleged acts.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Theodore De Witt was convicted of criminal conspiracy, and he brings error. Affirmed.

The plaintiff in error, Theodore De Witt, was convicted on an indictment charging a criminal conspiracy between himself, Thomas L. May, and W. J. McNab, beginning on or about the 13th day of August, 1921, and ending about the 20th of August, 1921, unlawfully and willfully to violate sections 6, 10, and 25 of title 2 of the National Prohibition Act (41 Stat. 305) by transporting and causing to be transported 96 cases of wine from Lachine, Canada, to Cleveland, Ohio, and to sell the intoxicating liquors

⊚⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

so transported and containing more than one-half of 1 per cent. of alcohol by volume and fit for use for beverage purposes to Theodore De Witt in violation of the sections of the National Prohibition Act above mentioned.

The indictment charges three overt acts, which, in substance, are as follows:

First. The entering into the unlawful agreement and conspiracy charged in the indictment.

Second. The unlawful transportation of 96 cases of Vermouth, Port, and Burgundy wines and other intoxicating liquors from Canada to Cleveland, Ohio, on the steam yacht known as the "Venice" for the purpose of sale to Theodore De Witt.

Third. The employment by De Witt of Ivy Burney to transport and deliver the 96 cases of intoxicating liquors from the yacht "Venice" to No. 1211 Euclid avenue, in the city of Cleveland, Ohio.

May and McNab reside in Canada and were never arrested. Upon the trial of De Witt evidence was offered by the government tending to prove that 97 cases of Anderson Scotch whisky were transported in the month of May, 1921, from Canada to Cleveland on the yacht Tranquillo, owned by Osborne and Lavelle of Canada, and in charge of Capt. William L. Curry, 60 cases of which were bought by defendant (who was steward of the Union Club), and delivered to him from the yacht Tranquillo by Ivy Burney; that at about this time, a further order was given by De Witt to Osborne and Lavelle for substantially 300 cases of wine and whisky to be transported from Canada and delivered to him in Cleveland; that in June of the same year another cargo consisting of 200 cases of Johnny DeWar whisky was transported on the yacht Tranquillo, in charge of Capt. William L. Curry, from Canada to Cleveland, 60 cases of which were sold to De Witt and delivered to him by Ivy Burney and Joe Basco from the yacht Tranquillo; that before the balance of the whisky constituting this cargo could be sold and delivered to other purchasers, the yacht Tranquillo and the whisky still on board were seized and confiscated by the government. This ended the connection of Osborne and Lavelle with defendant De Witt, so far as disclosed by the evidence. To the introduction of this evidence by the government the defendant at the time objected. His objections were overruled and exceptions were noted.

The evidence offered by the government directed to the conspiracy charged in the indictment tends to show that shortly after the seizure of the yacht Tranquillo by the government officers, a man by the name of Arnott inquired of Capt. Curry, if he knew anything about a wine order in Cleveland, and Capt. Curry told him that he thought there was such an order; that shortly thereafter Arnott appeared in Cleveland and told the witness Ivy Burney that De Witt had verified this wine order but refused to advance any money upon it; that a day or two later Burney had a conversation with De Witt in which De Witt made a similar statement; that about this time, or shortly thereafter, W. J. McNab and Thomas L. May purchased the yacht Venice and placed it in charge of the same Capt. Curry who had been in charge of the Tranquillo before and at the time of its seizure; that Arnott handed this wine order that he said had been verified by De Witt, to Thomas L. May; that May purchased the 96 cases of wine described in the indictment at Lachine, Canada, caused it to be placed on board the yacht Venice, and directed Capt. Curry to proceed with the yacht to Cleveland, Ohio, and to lie out by the crib where he could be met with another boat to which the cargo of wine could be transferred; that May went to Cleveland by rail; that he reached there and registered at the Hollenden Hotel before the arrival of the Venice; that De Witt told Burney that May was at the Hollenden Hotel and had 96 cases of imported wines coming on the boat; that he had made arrangements to buy this wine and Burney then called upon May at his hotel and was informed by him that Capt. Curry was on his way from Canada in charge of the yacht Venice and that he wanted Burney to meet the boat at the crib at midnight; that Burney arranged to do this, but the Venice did not arrive that night; that it did arrive the next night and tied up at the Pennsylvania Docks; that the boat left these docks the next afternoon,

returning to the Great Lakes Dredging Company dock, located at the foot of West Fifty-Fourth street, Cleveland, Ohio; that about midnight, while Burney and others were unloading this wine and placing it on the truck, the wine and boat were seized by government officers.

W. H. Boyd, of Cleveland, Ohio (Boyd, Cannon, Brooks & Wickham, of Cleveland, Ohio, on the brief), for plaintiff in error.

Berkeley W. Henderson, Asst. U. S. Atty., of Cleveland, Ohio (Edwin S. Wertz, U. S. Atty., of Cleveland, Ohio, on the brief), for the United States.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge (after stating the facts as above). [1] The first point made is that the indictment is insufficient because it does not state more in detail what the violation of the law was to be. Counsel say:

"The indictment must go further; it must state what the violation was or of what the offense consisted."

The indictment charges that—

The defendants did conspire and agree together "to commit an offense against the United States, to wit, to unlawfully and willfully violate sections 6, 10 and 25 of title II of the * * * National Prohibition Act, that is to say, that the said May and McNab would transport suitable intoxicating liquors * * * from Lachine in the Province of Quebec, Dominion of Canada, to Cleveland, in the state of Ohio, and would there sell to the said De Witt said ninety-six cases of distilled spirits and intoxicating liquors * * * in violations of sections 6, 10 and 25 of title II," etc.

The specific criticism is that the statutory offenses are transporting without a permit, transporting without making record, and transporting with intent to sell. Cases are cited which hold that an indictment for conspiracy to possess intoxicating liquors contrary to the provisions of the law is insufficient. U. S. v. Dowling (D. C.) 278 Fed. 630; Hilt v. U. S. (C. C. A. 5) 279 Fed. 421. These cases can be distinguished. Not all possession is unlawful. No affirmative action by the possessor of ante-prohibition liquor, like getting a permit or making a record, is necessary to make his possession lawful. Not so as to transportation. There is an underlying general prohibition, which can be avoided only by the affirmative act of the one who transports. We think a charge that intoxicating liquors were transported in violation of sections 6, 10, and 25, is a good enough charge that the transportation was without any statutory excuse; and that when the particular transportation is so completely identified as it is here, by stating the circumstances, the indictment is sufficient. Rudner v. U. S. (C. C. A. 6) 281 Fed. 516.

Sale or transportation in violation of the provisions of the specific sections of the act named cannot be a sale or transportation authorized by other provisions of the act. There is no substantial difference between the allegation that the defendants conspired to violate section 6 of the act, by transporting liquor in violation of section 6, and the allegation in the Rudner Case, which charged a conspiracy to violate the act by transporting, etc., otherwise than as authorized by the act and

in violation of its provisions. Further, the act expressly provides that it shall not be necessary to negative possible defenses. This provision is not without force in determining the essentials of this indictment.

For these reasons we hold the indictment good.

[2] The witness Curry, captain of the Venice, was permitted to testify that before leaving Montreal, May, one of the owners of the boat and shippers of the liquor, had told him that it was intended for the Union Club. At the same time the jury was cautioned that this was not evidence as against DeWitt that he was a member of the conspiracy. This admission is said to be error, because May's statement, while made by one of the conspirators, did not pertain to the execution of the conspiracy, since the captain's part in its execution was only to take the liquor to the vicinity of Cleveland. It is therefore said that May's statement to Curry was mere gossip. Without critically examining the rule which plaintiff in error invokes, that such statement, to be admissible against other conspirators, must be of importance to the carrying out of the plan, we think the rule, however broad it may be, does not operate to exclude this testimony. Curry was placed in possession and control of the yacht and cargo, and charged with the responsibility of delivering it to the right person. In order that he might properly discharge this duty, and even though the plan of procedure might not miscarry, it was desirable, if not necessary, that the master of the boat should know to whom ultimate delivery of the cargo should be made; and such knowledge by the master was quite essential in the contingency that the plan should miscarry. For this reason, May's statement was one which reasonably pertained to the execution of the conspiracy.

[3] We do not overlook the peculiar situation here existing. De Witt was the only person on trial. May had never been arrested. The evidence, therefore, could have no convicting effect against anybody except De Witt, and since, as against him, it could have no pertinence except to show his participation in the conspiracy, it would seem it could have no effect in the case except that effect which the law says it must not have; but we do not understand that the settled rules of evidence in conspiracy cases are to be varied in favor of a defendant, who, for one reason or another, gets a separate trial. An innocent defendant may sometimes suffer, as indeed he may through the improbability that the jury will always remember all the instructions given to them for the limitation of evidence in these cases; but in the one case as in the other, the law considers careful and clear instructions by the court to be a sufficient safeguard.

The remaining substantial question is as to the evidence connecting De Witt with the first and second Tranquillo transactions, and the charge of the court on that subject. The complaint is that previous offenses of the same character were received to show De Witt's guilt of the offense charged. The majority of the court has concluded that the record cannot be thus interpreted; but to make the situation clear further reference to the facts is necessary.

The evidence for the government substantially tended to show that De Witt, through Burney, bought part of the first cargo of the Tranquillo; that he knew that Osborne and Lavelle had brought this cargo

from Canada and were promising to bring more; that he desired to take advantage of this plan and lay in a large supply for his use; that he gave Osborn and Lavelle an order for about 300 cases of wines and liquors which it was expected would be brought over from Canada in subsequent trips of the Tranquillo (which is called the "wine order"); that Osborne and Lavelle took this order back to Canada with them; that among the articles ordered had been DeWar whisky; that upon the next trip of the Tranquillo, it came completely loaded with DeWar whisky only, because special reasons made immediate shipment necessary of all this whisky Osborne and Lavelle had; that De Witt bought, pursuant to his order, as much of the DeWar whisky as he wanted, but before the rest of the cargo was sold the boat was seized and Osborne and Lavelle put out of business; that Arnott, learning in some way of the giving of the order and its nonfulfillment, came to Cleveland to see De Witt, who renewed or affirmed to him the order, and promised to accept the goods from anyone whom Arnott would procure to ship them; and that the Venice shipment was made in partial fulfillment of this wine order thus given and renewed by De Witt. De Witt admitted purchasing from Burney liquor at a time coincident with the second Tranquillo arrival, but denied current knowledge of its postprohibition character; and wholly denied the giving of this wine order or any connection with it. As the case developed, it became apparent that whether or not De Witt had given the order to Osborne and Lavelle and confirmed it to Arnott was the vital question in the case. If he had done so, there would seem to be no clear escape from conviction; if he had not, there was little, if any, case against him. It is in the light of this situation that we must observe the charge of the court with regard to the two Tranquillo transactions. It was as follows:

"The defendant is not being tried, and none of the defendants are charged by this indictment with any offense growing out of either of these Tranquillo transactions. The offense, if any was committed by the defendant, by way of conspiracy, or his offense as committed with respect to the purchase and possession of the liquor received in the Tranquillo, is not the offense with which he is on trial. That evidence is received only for such weight, if any, as you may think it has, to show that defendant was a party to a conspiracy, if there was a conspiracy, with reference to the Venice transaction, and for the purpose of showing the motive and intent with which the defendant entered into the conspiracy, if he did enter into a conspiracy, with reference to the Venice transaction. The evidence of the relationship and association between the defendant as participating in those prior transactions may be received and weighed by you only so far as it may throw any light upon the question of whether he did or did not participate in the Venice transaction, and, if he did participate in the Venice transaction, with what motive and intent he participated therein."

The circumstances shown by the government's evidence would have permitted an indictment for a continuing conspiracy, over a period covering the two Tranquillo and the one Venice voyages, under which indictment what was done with reference to any one of the three might have been overt acts and might have been provable; but that was not the character of this indictment. It very carefully defined the conspiracy charged by describing the Venice transaction only. We have, therefore, plainly a case where a man is upon trial for one offense and

the jury is permitted to consider his connection with two previous offenses of similar character. This is said to have been in violation of the rule announced by the Supreme Court in Boyd v. U. S., 142 U. S. 450, 458, 12 Sup. Ct. 292, 35 L. Ed. 1077, and by this court in Worden v. U. S., 204 Fed. 1, 5, 122 C. C. A. 315, and Shea v. U. S., 236 Fed. 97, 104, 149 C. C. A. 307, which rule is so well established and so essential to prevent unjust convictions that it must not be minimized Does the record in this case show substantial violation of this rule?

[4] De Witt's connection with the former matters was permitted to be considered by the jury as affecting, first, his intent in the Venice transaction, and, second, his participation therein. If it were necessary to justify upon the theory of showing intent, we should have grave doubt. If De Witt participated in this conspiracy charged, we see no possible question of intent to be submitted to the jury. Without participation he was not guilty, and with participation he necessarily had the guilty intent. The case is not one where the effect of suspicious circumstances may be intensified by showing a mind criminally inclined, in the respect involved and at about that time, or can be met by an explanation showing an innocent intent. The holding of the Circuit Court of Appeals for the Second Circuit on this point (Marshall v. U. S., 197 Fed. 511, 515, 117 C. C. A. 65) would call, at least, for careful attention. However, this very reasoning leads to the conclusion that if the intent is not really a matter in issue, and if the evidence as to former offenses is admissible to show participation in the latter, there can be no harm in considering it also on the question of intent. If there were an error, it would be an academic one.

[5] We are satisfied that the giving of this wine order and its confirmation to Arnott, if true, were facts inherently relevant to the question of De Witt's participation in the Venice plan; and a considerable amount of proof as to the first and second Tranquillo transactions was inseparable from a thorough trial of the issue whether or not he gave the wine order. If De Witt had, in truth, in May, just purchased from Osborne and Lavelle 60 cases of whisky which he knew they had brought over in the Tranquillo, it would be much more natural that he should give them an order for more to be brought in the same way than it would be if he had made no such purchase or had any dealings with them or any knowledge about the boat. When we come to the second Tranquillo trip, we find it is the theory of the prosecution that the order given to Osborne and Lavelle had not been carried out, and that the later arrangement with Arnott was its substitute. To prove this succession, it was relevant to show why the first order had not been carried out, that De Witt's requirements remained unsatisfied, and that he would therefore naturally continue the order. Hence it was proved that while his order called for 150 cases of whisky, divided among several brands of which DeWar was one, and hence the Tranquillo on its second trip should have brought an assorted lot, yet that there was special necessity to get rid of all the DeWar whisky at the Canadian end, and so they loaded a boat with that, intending to give him as much as he wanted and sell the rest elsewhere. This proof, coupled with proof that De Witt did buy part of the DeWar

whisky brought on this second trip and thereafter confirmed the remainder of the old order, were legally pertinent in support of the prosecution's theory.

Of course, if these earlier matters are relevant facts upon the issue whether De Witt gave the order which the Venice was filling, they do not become inadmissible because they also tend to show former crimes, similar or dissimilar. Moore v. U. S., 150 U. S. 57, 61, 14 Sup. Ct. 26, 37 L. Ed. 996; Tucker v. U. S. (C. C. A. 6) 224 Fed. 833, 840, 140 C. C. A. 279.

If the defendant thought that the charge of the court and the rulings in admitting evidence were not closely enough limited to the precise point to which they were legally pertinent under the theory we have just stated, but were open to a too broad construction, erroneous under the rule of the Boyd Case, more careful limitations might have been asked and probably would have been granted; but the only point made before the trial court was that De Witt's connection with the former transactions was wholly inadmissible, to any extent, for any purpose. Upon this broad ground, we think the defendant was wrong and the court was right. A majority of the court, therefore, cannot find reversible error in the mere possibility that the jury might think "guilty of the second if guilty of the first."

[6] Complaint is also made because of the admission of testimony, by the hotel records, that in May and again in June there were repeated telephone calls from the room occupied by Lavelle and Osborne to the Union Club. It is argued that, to make this testimony pertinent, it is necessary to infer, first, that the calls were from Lavelle and Osborne rather than from some one else who might have been in the room; to infer, second, that the calls were followed by conversations with the person called at the Union Club rather than that they were unanswered; and to infer, third, that the person called for and reached was De Witt rather than some other employee of the club or some one of its thousand members. We do not need to pass upon this objection and argument, because Burney testified to relations and dealings going on at these times which distinctly supported the inference that these calls indicated talks by Lavelle and Osborne with De Witt, and De Witt himself testified, as to the June period, that he did talk with them by telephone from the Union Club one or more times, and that he found on his desk repeated incoming calls for him from the hotel, which he supposed to be calls from them. Even if the necessary supporting proofs are not in the record at the time such testimony is admitted, the error, if any, in its admission would be cured by the later introduction of the required evidence. See Wallace v. U. S. (C. C. A.) 291 Fed. 9721 opinion this day filed.

[7] It is also claimed on the part of the plaintiff in error that the court erred in its charge in stating to the jury that—

"It will be sufficient, in order to complete the crime in law, if the government proves beyond a reasonable doubt that any one of the three overt acts charged in the indictment was actually committed by any one of the alleged coconspirators after the alleged unlawful conspiracy was entered into."

· The objection to this part of the charge is based upon the claim that the first overt act charged in the indictment is but a repetition of the charge of the unlawful conspiracy itself and therefore, if proved, would not constitute an overt act in furtherance of the conspiracy. No exception was taken to this part of the charge, nor does it appear from the record that the attention of the court was challenged to the nature and effect of the first overt act stated in the indictment. In view of the fact that the evidence in relation to overt acts is directed wholly to the second and third ones alleged in the indictment, we do not think this was prejudicial error.

There are a number of other assignments of error that we think it unnecessary to notice. It is sufficient to say that in our opinion no prejudicial errors occurred; and the judgment is affirmed.