## HUTH et al. v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. January 8, 1924.)

### No. 3828.

1. **Conspiracy 43(6)—Indictment held to raise implication that transportation was without permit.**

An indictment charging that defendants did "unlawfully, willfully, and feloniously conspire to commit an offense against the United States, that is, to then and there willfully and unlawfully transport certain intoxicating liquors, to wit, whisky, the said transporting of such intoxicating liquors being then and there prohibited and unlawful," *held* sufficient to raise the necessary implication that the transportation was without permit.

2. **Indictment and information 86(2), 87(2)—Bill of particulars and proof held to justify failure to make charges in indictment more specific.**

Where the bill of particulars, in a prosecution for violating the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), and the proof, showed that the offenses charged arose in connection with the operation of a distillery, and that the government was unable to specify times and places with greater particularity, because the details of the transactions were concealed by defendants, *held*, that failure to make charges more specific was justified.

3. **Intoxicating liquors 134—Applying National Prohibition Act to liquor for nonbeverage purposes held valid.**

The National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.) may be enforced against a distiller of intoxicating liquor manufactured for nonbeverage purposes under Const. Amend. 18.

---

For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. Indictment and Information ⊜═88—Where act forbidden, indictment need not charge intent to break law.**

In indictments depending on acts positively forbidden in the exercise of the police power, when the emphasis of the statute is evidently on the achievement of some social betterment, it is not necessary to show the express intent to break the law.

**5. Intoxicating liquors ⊜═202—Indictment need not charge intent to violate National Prohibition Act.**

An indictment charging violation of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.) was not defective, because failing to charge defendant's intent to violate the act.

**6. Conspiracy ⊜═47—Evidence held insufficient to warrant finding defendants conspired to violate law.**

In a prosecution for conspiracy to violate and for violating the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), evidence *held* insufficient to warrant a finding that defendants conspired to have a truckman engage in unlawful possession or transportation of the liquor.

**7. Intoxicating liquors ⊜═236(6½)—That trucks with liquor were left on defendants' premises held insufficient to show possession.**

That a truckman left his trucks with intoxicating liquor on defendants' premises overnight *held* insufficient to show possession by defendants, in the absence of proof that truckman was defendant's agent.

**8. Intoxicating liquors ⊜═236(6½, 20)—Evidence held insufficient to show unlawful possession or transportation.**

In a prosecution for violating the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), evidence *held* insufficient to show unlawful possession or transportation of liquor.

In Error to the District Court of the United States for the Eastern District of Kentucky; Andrew M. J. Cochran, Judge.

M. E. Huth and others were convicted of conspiring to violate, and of violating, the National Prohibition Act, and they bring error. Reversed, and remanded for new trial.

Walter P. Lincoln, of Louisville, Ky. (Edwards, Ogden & Peak and Beckham, Hamilton & Beckham, all of Louisville, Ky., on the brief), for plaintiffs in error.

Sawyer A. Smith, U. S. Atty., of Covington, Ky. (John E. Shepard, and Rodney G. Bryson, both of Covington, Ky., and Henry S. McGuire, Asst. U. S. Attys., of Lexington, Ky., on the brief), for the United States.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge. The three plaintiffs in error were jointly indicted, along with Hawkins and Sweasy, upon an indictment containing four counts. Counts 1 and 2 charged conspiracy to violate the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.) by (count 1) transporting and (count 2) possessing intoxicating liquor. The others charged the substantive offense of (count 3) transporting and (count 4) possessing intoxicating liquor. The three plaintiffs in error were convicted on all four counts; the remaining two, upon counts 3 and 4 only. These two paid the fines imposed upon them.

⊜═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Objection was made in due form, but overruled, as to the sufficiency of the indictment. The objection was that it was in such general form that it did not identify the offenses charged. This indictment goes to the extreme in its reliance upon general terms; but, in connection with the bill of particulars furnished by the government, the District Court held it to be sufficient. We affirm this holding, but do so because of the peculiar character of the situation set out in the bill of particulars upon which the government intended to rely, and, having done so, we are compelled to regard the same character of offense as the one which the government must prove on the trial.

[1, 2] The first count (typical in this respect) charges that the respondent—

"on or about the 17th day of November, 1921, and before the finding of this indictment, in said Eastern district of Kentucky, did unlawfully, willfully, and feloniously conspire to commit an offense against the United States; that is, to then and there willfully and unlawfully transport certain intoxicating liquors, to wit, whisky, the said transporting of such intoxicating liquors being then and there prohibited and unlawful."

This form would be sufficient to raise the necessary implication that the transportation was without a permit. Albert v. U. S. (C. C. A. 6) 281 Fed. 511, 514. We assume, for the purposes of this opinion, that, owing to the positive and simple character of the object involved, it would not be necessary further to define the nature of the conspiracy, and we may likewise assume that the constitutional protection against subsequent prosecution for the same offense would extend to any offense which might have been proved under the indictment, and thus make effectual the guaranty against second jeopardy. It is more difficult to meet the objection that the indictment gave no such information as would enable the defendant fairly to prepare for trial. This is perhaps the very situation which gives legitimate office to a bill of particulars. The bill here furnished stated in substance that the possessing charged was in and about the premises and vicinity of the Belle of Anderson distillery, and that the transportation charged was from those premises to other places unknown to the United States. It further stated that the government was unable to make better specification as to times or places, for the reason that their details were all in the possession of the defendants and should have been kept upon the distillery records accessible to the government agents, but that such records were not kept or accessible, but were concealed by defendants, in order to prevent the government from making more definite allegations.

The indictment and bill of particulars may be further interpreted by the opening proofs upon the trial. The government made its prima facie case by showing that the defendants were in control of the distillery; that such records as were available showed that during the few months before November 17, 1921, over 5,000 cases of whisky went from the distillery into the free warehouse; that on November 17th the warehouse was practically empty; and that there were no records to show what had become of these 5,000 cases. This being the general character of the offense which, as shown by the bill of particulars and the proofs, the indictment was intended to charge, we are

satisfied to hold that greater particularity as to time, place, and other details of the offenses planned or committed, was not necessary.

[3] It is argued that the violations of law here involved depend upon extending the prohibition and regulations of the Volstead Act to nonbeverage liquor, and that such extension is not authorized by the Eighteenth Amendment, which deals with beverage liquors only. It is true that the express prohibition of the amendment carries a primary limitation to intoxicating liquor and a secondary limitation to intoxicating liquor for beverage purposes. It is fully decided that this primary limitation is not inconsistent with the regulation and even prohibition of nonintoxicating liquor, so far as Congress may think they are reasonably incidental to making effective the prohibition of intoxicating liquor. Ruppert v. Caffey, 251 U. S. 264, 282, 40 Sup. Ct. 141, 64 L. Ed. 260; National Prohibition Cases, 253 U. S. 350, 387, 40 Sup. Ct. 486, 588, 64 L. Ed. 946. The same principle applies with even greater force to the secondary limitation mentioned, and compels us to overrule the contention now urged.

[4, 5] In indictments depending upon acts positively forbidden in the exercise of the police power, "when the emphasis of the statute is evidently upon the achievement of some social betterment," it is not necessary to show the express intent to break the law. U. S. v. Balint. 258 U. S. 250, 252, 42 Sup. Ct. 301, 66 L. Ed. 604. This rule plainly covers the present case, and the indictment is not bad because lacking statement of respondents' intent.

[6] The remaining matter needing attention is the claim that there was no sufficient evidence to support the verdict. After the prima facie case above described had been made, and some witnesses had testified to various incidents, the government produced the truckman who on November 17th was engaged in moving the two truckloads of bottled whisky, which were then seized by the prohibition officers. Not only was he the government's witness, but no suggestion of impeachment or contradiction seems to have been made. Thereupon Mr. Hawkins, one of the defendants, testified for the defendants. From his testimony it appeared that he had been the superintendent and active manager of the distillery and free warehouse during this period; that he had kept the records required by law and the regulations, unless with minor exceptions; that he had made his own office in the nearest town to the distillery office for business purposes, and had kept there the chief records, for which there had been no suitable and safe place upon the immediate distillery premises, which were remote from any town or railroad; that no application had ever been made to him to inspect these records, nor had any request been made by the prohibition officers for any information on this subject; that, so far as there was any deficiency in the details of his records thus kept, it was supplied by duplicates which had been duly filed with the internal revenue collector of the district; that his records and permits kept in connection therewith fully accounted for every bottle which had gone into the warehouse and was not found there by the prohibition officers November 17th. The record must be taken as indicating that the government conceded this testimony to be true. Nothing was introduced in rebuttal regarding these subjects; the testimony is not challenged in

this court; and the case was submitted to the jury, apparently with the government's acquiescence, upon the supposition that this testimony in all substantial respects, was true. It is therefore clear that the case failed, in that aspect which had been given to it by the indictment and bill of particulars. Nevertheless the government claimed that the testimony discloses three incidents of unlawful transportation or possession, or both, any one of which would justify conviction, both for the act and for conspiracy; and the court so charged. This brings us to these three incidents.

The first and most important related to the transportation and possession of 478 cases on November 16th or 17th. The undisputed testimony shows that, early in October, Hawkins received from the Lewis Drug Company, of Pittsburgh, a permit authorizing the purchase and procurement by that company of 1,500 cases; that he procured the verification of this permit by mail from the Pennsylvania prohibition director; that pursuant thereto, and during October, he delivered to the Lewis Drug Company about 900 cases, which were taken away in two shipments, starting by truck from the distillery to Cincinnati, and leaving about 500 cases undelivered; that Theobald, a Cincinnati truckman, holding in due form a permit for carrying intoxicating liquor, had taken away the second of these shipments; that about November 15th he was again engaged in behalf of the Lewis Drug Company to go from Cincinnati to the distillery and bring away another shipment out of this permitted sale; that he took two trucks and helpers, reached the distillery in the afternoon, took the 478 cases pointed out to him by the storekeeper in charge, and loaded them upon his trucks; that he expected to get a copy, or duplicate, of the main permit to go along with his shipment, but the copy was not ready (apparently because of Hawkins' absence), and he postponed until morning the start back; that on his own motion, and to secure the safety of the whisky then in his possession as carrier, he put the two trucks in a barn upon the premises for the night; and that before anything more was done the prohibition officers arrived and seized the liquor.

To this prima facie justification of the initiated transportation and the complete possession outside of the bottling warehouse, the government replies, first, that the permit was invalid, because it had not been countersigned by the prohibition director of Kentucky; second, that it had expired. It is not clear that either of these replies is good enough to make a sufficient basis for sustaining the conviction for conspiracy. The requirement that the prohibition director of the state where the liquor was located should countersign the permit issued by the director of the state where the purchaser lived had been made by a regulation of the department, which regulation was only a few weeks old when this permit was issued. The distillery superintendent testified that he had never heard of the regulation, there was nothing to indicate that any of the defendants knew of it, and whatever force might be given to such a regulation as a part of the essential foundation of a felony, if the regulation had been known to defendants, or had been of sufficient long standing to have notoriety, its existence and violation cannot justify, upon this record, this conviction of conspiracy. The

conspiracy intended to be charged in this indictment was one having its origin and active existence long before this regulation was made.

Nor can it be safely inferred that this permit had expired. It was not a permit for transportation at all. We find nothing in the regulations to indicate that any permit for transportation is required, in addition to the carrier's license permit and the implied permit which results from permission to purchase and procure.[1] The present permit was of that class, and expressly declared that the "permit to purchase" expired 30 days from October 1st.[2] It is clear that the right to purchase continued for 30 days, and it would seem that the implied permit to transport to the purchaser's authorized storage place would continue a reasonable time after the purchase might be made. Theobald's testimony is express that he was not making any purchase at this time, but had merely come to get the liquor which belonged to his principal, the Lewis Drug Company. It is the inference, at least as natural as any other, that the purchase had been made within the life of the permit.

We are satisfied that this state of facts did not justify any juror in concluding that the plaintiffs in error conspired to have Theobald engage in unlawful possession or transportation. Further, the theory of the indictment and bill of particulars excludes this incident. The government knew it fully at the time it occurred.

[7] Independent of the question of precedent plan, the plaintiffs in error might be liable under counts 3 and 4, as for an actual possession or transportation of the 478 cases, if Theobald was their agent, and if this possession and transportation were in fact unlawful; but there was nothing to dispute his testimony that he represented the purchaser only, and that nothing which he did was on behalf of the plaintiffs in error. The mere leaving of the trucks overnight in a barn on premises which the plaintiffs in error in a general way controlled is not sufficient, for these purposes, to make his possession theirs.

[8] The second and third incidents submitted to the jury call for further statements of the interest of plaintiffs in error in the subject-matter. Hawkins and another owned this distillery and warehouse receipts for part of the liquor therein. Plaintiffs in error owned the remainder of the warehouse receipts, and contracted with Hawkins to buy his receipts and to have the whisky bottled. For that purpose they leased the distillery premises, leaving Hawkins in the management of the bottling business. The three of them also took a house immediately adjacent to be used as their living headquarters until the liquor should all be bottled and sold. To say that the three co-operated in these respects is to give the greatest permissible force to the testimony for the government. It does not appear that any one of the three was particularly in charge. This being the relation of the plaintiffs in error to the premises, two witnesses testified that one night they were requested to go to a barn upon the premises for some work, and, doing so, they took the bottles out of a few cases of whisky, wrapped the bottles in paper, and put them back in the cases. This transaction is left quite

---

[1] See section 83, Regulation 60; also section 87.

[2] Section 55 (e), Regulation 60, directs that permits to purchase, for manufacture or sale shall expire in 90 days.

inexplicable. The witnesses do not know, or at least do not tell, who employed them, and efforts to show that it was one of the plaintiffs in error completely failed. It might have been anybody else around the distillery. What this transaction was for no one can suggest. It might or might not have been upon the same night when the trucks were in this or some other barn, but there is no suggestion that the paper-wrapped bottles were later found on the trucks, or that any cases were missing from the trucks. The evidence raises a suspicion that some kind of unlawful handling of whisky occurred on these premises at some time, and a suspicion that the plaintiffs in error, by virtue of their general control, might have been responsible for whatever did occur; but we cannot regard this as substantial testimony, tending to show unlawful possession or transportation by them, much less a conspiracy therefor.

The remaining incident is this: After Theobald and his men had decided to stay overnight, there was a sort of general supper at the house; two, if not three, of the plaintiffs in error were at the house that evening. One witness employed by the distillery testifies that he went to the house and observed on a table (he does not say in what room) a partially emptied bottle of whisky, from which he took some drinks. That is all upon that subject. There is nothing more to connect the plaintiffs in error with it. We think it quite insufficient to show transportation or possession by them. Assuming both to be unlawful, they might as well have been by any one else of the several others about as by these plaintiffs in error, save for the plausible, but insufficient, suspicion already mentioned.

For the reasons thus stated, the judgment must be reversed, and the case remanded for a new trial. As to that, we may properly say that these three incidents have now been so fully disclosed and made the basis of the prosecution that, if the government shall proceed to a new trial upon the same basis, defendants therein will be as fully advised as if these incidents had been disclosed in the bill of particulars.