## MILLER v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. July 2, 1924.)

Nos. 4017, 4053.

1. **Criminal law** ⊗⟹1129(5)—**Subsequent filing of supplementary assignment of error proper, where counsel unable to get record.**

Where without fault on his part counsel was unable to get copy of trial record within time in which he must obtain writ of error in order to get an effective supersedeas, subsequent filing of supplementary assignment was proper.

2. **Indictment and information** ⊗⟹86(2), 87(2)—**Indictment for conspiring to violate Prohibition Act held sufficient as to time and place.**

An indictment for conspiracy to violate National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), closely fixing date and place, *held* sufficient.

3. **Criminal law** ⊗⟹197—**Indictment in general terms bars subsequent prosecution for offenses provable under first indictment.**

A judgment on an indictment alleging in general terms every fact necessary to constitute offense is a bar to subsequent prosecution for any offense which could have been proved under indictment.

⊗⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

300 F.—34 ·

4. **Indictment and information** ⬤⟹121(2)—**Indictment not giving sufficient knowledge to enable defendant to prepare for trial curable by bill of particulars.**

General statements of indictment, not giving defendant sufficient knowledge to enable him to prepare for trial, can be cured by obtaining bill of particulars.

5. **Criminal law** ⬤⟹1177—**Immaterial whether court had power to change sentence and then reinstate original sentence.**

It is immaterial whether court had power to vacate on June 25 a sentence imposed on June 19 at the same term, and impose a lighter sentence, and then vacate that sentence on July 6 and impose original sentence, for both changes are either valid or invalid, and result is same in either case.

6. **Criminal law** ⬤⟹1177—**Summary appropriation of money in bank in payment of fine not reversible error.**

Where parties interested were present in court, and made no objection summary appropriation of defendant's money in a bank in name of defendant's sister in payment of fine, *held* not reversible error.

7. **Criminal law** ⬤⟹1209—**Sentences for sale and for possession of intoxicating liquors held double punishment for same act.**

Where act of possession was merely that necessarily incidental to a sale, sentences for sale of intoxicating liquor and for possession thereof constitute a double punishment for same act.

8. **Criminal law** ⬤⟹1030(1)—**Errors based on objections not saved in trial court need not be considered.**

Judicial Code, § 269 (Comp. St. § 1246), does not require Circuit Court of Appeals to notice errors based on objections not saved in trial court, and it will do so only in case of palpable miscarriage of justice.

9. **Intoxicating liquors** ⬤⟹236(13)—**Evidence of intoxicating character of liquid held sufficient.**

Evidence of the sale of a "moonshine can" and 6 gallons of liquid for $30 *held* sufficient to indicate intoxicating character of liquid, where liquid was treated as whisky throughout trial.

10. **Criminal law** ⬤⟹395—**Pocket memorandum showing orders held not found as result of unlawful search.**

Pocket memorandum showing orders for sale of liquor, found in defendant's place of business, *held* not the result of an unlawful search.

11. **Intoxicating liquors** ⬤⟹143—**Place held not "nuisance."**

Mere use of premises as an office from which to give directions as to a liquor business, or at which to receive payments, or carrying in one's pocket on such premises a book showing unlawful transactions in liquor, does not make the premises a place where liquor is kept or sold, so as to constitute a "nuisance," under National Prohibition Act, § 21 (Comp. St. Ann. Supp. 1923, § 10138½jj).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Nuisance.]

12. **Indictment and information** ⬤⟹33(2)—**Objection that indictment was signed by assistant district attorney held without merit.**

Objection that indictment for violating National Prohibition Act was signed by assistant district attorney in his own name only was without merit, in view of Comp. St. § 1420, notwithstanding section 1296.

13. **Intoxicating liquors** ⬤⟹238(3)—**Testimony that liquid was whisky and alcohol sufficient to go to jury on that issue.**

Testimony of police officers who made arrest that articles loaded on truck were whisky and alcohol *held* sufficient to go to jury on that issue.

14. **Intoxicating liquors** ⬤⟹236(8)—**Proof of single sale sufficient to justify finding that seller was engaged in that business.**

Under National Prohibition Act, § 21 (Comp. St. Ann. Supp. 1923, § 10138½jj), while a single sale is not of itself engaging in liquor business, yet proof of a single sale under some circumstances may be sufficient to justify jury in finding that seller was engaged in that business.

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**15. Criminal law ⟨⟩1174(1)—Submission to jury of liquor seized held not prejudicial error.**

Submission to jury of liquor seized for their determination as to its alcoholic quality *held* not prejudicial error; evidence as to its identity as alcohol and whisky being undisputed.

In Error to the District Court of the United States for the Western Division of the Northern District of Ohio; John M. Killits, Judge.

Philip Miller was convicted under one indictment for possession of intoxicating liquor, selling intoxicating liquor, and maintaining a nuisance place, and under another indictment for similar offenses. Conviction in first case set aside as to sentence under nuisance count, and sentence under possession count vacated, but otherwise conviction affirmed, and conviction in second case affirmed.

H. A. Behrendt, of Detroit, Mich., for plaintiff in error.

Geo. E. Reed, Asst. U. S. Atty., of Toledo, Ohio (A. E. Bernsteen, U. S. Atty., of Cleveland, Ohio, on the brief), for the United States.

Before DENISON, MACK, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge. Philip Miller, with others, was indicted on four counts, the first for conspiracy to violate the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), the second for unlawful possession of intoxicating liquor, the third for unlawful sale of whisky, and the fourth for maintaining a nuisance, viz. a place where liquor was unlawfully kept and sold. He was convicted on all four counts, upon evidence tending to show that he was dealing on a large scale in "moonshine" whisky. He was sentenced June 19, 1923, upon the nuisance count to imprisonment for one year in the Dayton workhouse and to pay a fine of $900, upon the sale count [1] to imprisonment in the Canton workhouse for six months, upon the possession count to pay a fine of $400, and upon the conspiracy count to imprisonment in Atlanta for two years and to pay a fine of $9,500 —the imprisonment sentences to be consecutive and not concurrent. There having been some discussion of a plan by which the sentences would be lessened and Miller would pay the reduced fines, an order was entered on June 25th on the journal of the court, vacating the former sentence and imposing a new one for fines of about half the former amounts and for somewhat less imprisonment. On July 6th an order was entered vacating the sentence of June 25th, and reimposing a sentence the same in all respects as that of June 19th, excepting that the imprisonment upon the sale count was to be in the Dayton workhouse. On the same day, it having been made to appear to the court, upon a summary and informal inquiry, that Miller had about $6,000 in a bank deposit in the name of his sister, and his sister being present in court and admitting that the money belonged to Miller, and neither she nor Miller making any objection, the court ordered that this money be paid by the bank to the clerk of the court, and by the clerk applied to the payment of the fines adjudged against Miller. No proceeding for review being initiated, commitment issued, shortly after July 6th,

---

[1] The count numbers are in some confusion in the printed record, but we state them as they were intended.

and Miller began his sentence in the Dayton workhouse. New counsel having been employed by Miller, a writ of error was allowed on July 17th, and Miller was admitted to bail and released from the workhouse.

While so on bail and awaiting a hearing in this court, Miller was again indicted (with others), in count 1 for a conspiracy, formed in September, 1923, to violate the National Prohibition Act, in count 2 of the same indictment for possession of intoxicating liquor, and in count 3 for maintaining a nuisance place where liquor was kept and sold. Upon this second indictment he was found guilty on all three counts. He was thereupon sentenced to pay a fine of $1,000 and to imprisonment in Atlanta for two years, the term to commence at the conclusion of the imprisonment imposed in the former case. In the second case a writ of error was allowed in October, 1923.

[1] In each case the assignment of errors, filed with the petition for a writ of error, omitted some claims of error which were afterwards supplied by a so-called supplementary assignment. Although there is in the rules no express provision for such supplementary assignments, we think they were permissible under the circumstances of this case. Without fault on the part of counsel who prosecuted the review, he was unable to get a copy of the trial record within the time within which he must obtain a writ of error in order to get an effective supersedeas. As soon as a copy of the record could be had, and in connection with settling the bill of exceptions, the supplemental assignments were filed. We think they should be treated as in substantial conformity to the rules.

[2] The indictment is attacked as insufficient, because it states conclusions, does not state all the necessary elements of the crime, relies upon the overt acts to make it complete, does not negative facts which might make the possession legally permissible, is in too general terms, would not prevent a subsequent conviction, and does not enable the defendant to prepare for trial. Omitting unnecessary verbiage, the indictment, filed June 7, 1923, is as follows:

"That Philip Miller, Jake Greenberg, and W. Josak * * * heretofore, on or about June 5, 1923, at Toledo, Ohio, * * * in the division and district aforesaid, * * * did unlawfully, willfully, knowingly, and feloniously conspire, combine, confederate, and agree together with one another and each with the other, to commit an offense against the United States, to wit, to violate the * * * National Prohibition Act, particularly title 2 thereof, in that they would unlawfully, willfully, and knowingly * * * manufacture, possess, transport, barter, and sell intoxicating liquors and distilled spirits, the same then and there containing one-half of 1 per cent. of alcohol by volume and then and there being fit for beverage purposes, in violation and contrary to the provisions of the National Prohibition Act."

[3, 4] This indictment closely fixes date and place and is sufficient against all the objections urged, which are all covered by our recent decisions. Dierkes v. U. S. (C. C. A.) 274 Fed. 78, 79; Rudner v. U. S. (C. C. A.) 281 Fed. 516; Robilio v. U. S. (C. C. A.) 291 Fed. 975; Remus v. U. S. (C. C. A.) 291 Fed. 501; De Witt v. U. S., 291 Fed. 995, 998; Hindman v. U. S., 292 Fed. 679; Huth v. U. S., 295 Fed. 35. Without any help from the overt acts, there is an allegation of every fact necessary to make the offense. As pointed out

in the Huth Case, supra, a judgment on such an indictment is a bar to subsequent prosecution for any offense which could have been proved under the indictment, and the very generality of its terms, therefore, makes it the more ample protection. The objection that such general statements do not give defendant sufficient knowledge to enable him to prepare for trial is no longer of its former importance, since most defects of this character—certainly any appearing in this indictment —can now be cured by obtaining a bill of particulars.

Cases of which Keck v. U. S., 172 U. S. 434, 19 Sup. Ct. 254, 43 L. Ed. 505, is typical, and which hold an indictment insufficient because it merely states a general fact in the words of the statute, do not apply to the situation existing under the National Prohibition Act. They refer to some act like importation of merchandise, which is presumptively lawful, and therefore the indictment must show the details which make the act unlawful. Not so with the sale of intoxicating liquor. It is lawful only if exceptional circumstances exist, and, by the general policy of the law, the burden of justifying is put upon the seller.

[5] Complaint is further made as to the second and third imposition of varying sentences, based upon the same conviction. It should be said that the district judge certifies in the bill of exceptions that the June 25th order of vacation and of resentence was inadvertently entered by the clerk, without intentional sanction by the judge, and that the order of July 6th was intended to be merely a correction of this error and a reimposition of the original sentence. Even without the aid of this explanation, we do not see where there is room to complain. After the sentence of June 19th, and during the term and before the commitment issued, the court either had or had not power to change its terms. If there was power to do so, the same power would permit another change, such as was made on July 6th; if there was no power, the order of June 25th was void, and that of June 19th stood unimpaired, and that of July 6th was a substantial reannouncement of the same result. We do not overlook that as between the orders of June 19th and July 6th, there was a change in the place of imprisonment upon the sale count from one workhouse to another; but, if this was more than a mere inadvertence in one order or the other, no reason is suggested why there could be any substantial prejudice from the change.

[6] Complaint is made of the order appropriating money in the bank to apply upon the fines. The practice pursued was summary; we could not approve it under ordinary circumstances as against objection duly made; but in view of the circumstances, and the result which we reach upon this review, we find no prejudice to Miller justifying reversal of this order. There were judgments in favor of the United States for about $11,000; there was no stay, and execution could have issued; apparently the fund in the bank could have been reached by attachment or by garnishment; Miller and his sister and the bank were the only persons interested, and all were present in court and made no objection. It does not appear that the court has parted with control of the money paid into court, so that it could not be refunded if occasion should arise. The fact that Miller was not represented by

counsel at this time induces some hesitation in affirming, but the plain lack of any actual injury to Miller's rights removes that hesitation.

Complaint is made because the trial judge refused to permit the writ of error to operate as a supersedeas, unless Miller would give a bond sufficient in amount to secure the payment of the fines, and upon the theory that the statutory "damages and costs," which are to be the condition of a supersedeas bond, refer to fines in a criminal case. It is said that in any criminal case the right of supersedeas upon giving a cost bond is absolute. If the fine and the imprisonment are treated as a unitary judgment, all of which is to be covered by only one set of conditions, confusion is suggested between the right to require a bond to cover the fine (Hardesty v. U. S. [C. C. A. 6] 184 Fed. 269, 106 C. C. A. 411), and the supposed broad right of one convicted of crime to have a supersedeas without substantial bond. (McKnight v. U. S. [C. C. A. 6] 113 Fed. 451, 51 C. C. A. 285). This was somewhat considered by us in Hanes v. U. S., 299 Fed. 296, decided May 16, 1924. The question does not exist here in substantial form. Miller filed no petition for writ of error until July 17th, and he was thereupon immediately released from imprisonment upon a bail bond, which had the practical effect of a supersedeas, but which was not conditioned upon payment of the fine. He therefore had no real ground remaining upon which to base his complaint as to the precedent procedure.

[7] It is next urged that sentences for the sale and for the possession constitute a double punishment for the same act. We think this contention is sound. The act of possession relied upon was merely that possession necessarily incidental to the sale which was the basis of the sale count. We considered this subject in Reynolds v. U. S., 280 Fed. 1. While there may be, and commonly is, possession without sale, so that possession for a substantial time, followed by a sale, might be two distinct offenses, in this case the only possession shown was that which temporarily came to Miller for the purpose of completing by delivery the sale which he was making. The same testimony which showed the sale necessarily showed the only possession which is shown at all. It follows, as pointed out in the Reynolds Case, that judgment upon the sale count would bar subsequent prosecution for this act of possession, and that there should not be separate and cumulative sentences. Since the sale is plainly regarded as a more serious offense than the mere possession, we think that, for the purposes of sentence, the latter should be merged in the former. The sentence upon the possession count must therefore be set aside.

[8, 9] Coming to the proceedings on the trial: The defendant made no request for an instructed verdict at the end of all the proofs, and proffered no requests to charge, and took no exception to the charge as given. Section 269, Judicial Code (Comp. St. § 1246), does not require us to notice errors based upon objections not saved in the trial court. Robilio v. U. S. (C. C. A. 6) 291 Fed. 975, 980, 981. We do so only when we see a palpable miscarriage of justice. We find only two matters of any substance which, with the utmost liberality in the application of the rules, permit our consideration. It is said that there

was no evidence of the intoxicating character of the liquid which the proofs tended to show was sold by Miller to the witness. The thing sold was referred to by the witness as "that moonshine can." Any inference that he was referring to the can, and not to its contents, is rather forced. The question of what he meant was for the jury. The can and its contents were offered in evidence as Exhibit 3. The government offered no proof of analysis of the contents, but no question about this was raised until after the charge had been finished. To the suggestion then made that there was no such proof the judge replied that the contents had been treated as whisky throughout the trial, and that no one had questioned their character; but he would submit the exhibit to the jury, which, while it might not be competent to determine the exact percentage of alcohol when the fraction was small, could determine of its own knowledge whether this article was whisky.

No objection was made to this course, and we are not called upon to consider its propriety. Giving the utmost effect to the comments of defendant's counsel, they amount to a request for an instruction that there was no evidence that the article sold was intoxicating liquor, and in view of the unchallenged statement of the judge as to the conduct of the trial, such request could then have been rightly overruled, without more. It would be nonsense to suppose that the witness was buying, or Miller selling, for $30, six gallons of pure water, or near beer, or milk, or toilet water, or that "the stuff" several times mentioned was bought or sold as anything else than alcoholic liquor.

[10] Miller was ostensibly conducting the legitimate manufacture of soft drinks, or perhaps only the bottling of pure water, at 516 Dorr street, in Toledo. He was suspected of using this business as a cover for the sale of illicit liquor. Prohibition agents, having been directed to him as a possible seller, met him upon the sidewalk in front of this place and arranged a purchase. He thereupon, and after the parties had gone inside, entered the transaction in a small pocket memorandum book, and sent word to some other place directing the purchased liquor to be brought for delivery. The purchasers waited outside. Shortly afterwards an automobile containing the "moonshine can" drove up and stopped across the street. At this point some arrests were made. Miller was in the building, went out the back way, and his pocket memorandum book was found where he had laid it down as he hurriedly left. The book seemed to show a series of transactions within the last 30 days, covering many sales at prices realizing more than $8,000.

[11] We find no substantial ground for the claim that this book should not have been received in evidence because the result of an unlawful search. That claim does not justify very serious consideration; but the book was also used as evidence that 516 Dorr street was a place where intoxicating liquor was kept or sold, and, indeed, it is the only evidence which is claimed to justify that conclusion. We think it insufficient. The record indicates that the liquor in which Miller was dealing was probably at some other place and was sold to purchasers without ever being in these premises. At the utmost this place, where Miller carried on another business, constituted his office,

from which he gave directions as to the liquor business, or in which he perhaps sometimes received payments. This book he carried in his pocket. Such incidental use of these premises, even if as an office headquarters, did not, in our judgment, make them a place where liquor was kept or sold, within the meaning of section 21 of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½jj).

Conviction and sentence upon this nuisance count should be set aside, and the case remanded for a new trial upon that count. Except for this, and for the vacation of the sentence upon the possession count, the conviction and sentence (4017) should be affirmed. The money paid into court should be wholly applied upon the fine on the conspiracy count. The case will be remanded accordingly.

In the second case, Cutler and Hapner, codefendants with Miller, testified on behalf of the government that, when the three were arrested, they were all engaged, at half past 1 in the morning, in loading upon a truck belonging to Cutler cases and cans found in a garage; that the enterprise was Miller's, and that he had engaged Cutler and Cutler's truck for the purpose; and that Miller had brought Hapner there in Miller's automobile, also guiding Cutler to the place. Cutler said that Hapner was also active in the enterprise; Hapner, though claiming that he came along "just for the ride," fully confirmed Miller's participation. Miller did not testify; his only answer is found in his statement to the officers at the time of the arrest that he just happened to be there. There was nothing to dispute this story of Cutler and Hapner, except that they were more or less impeached through having told another story, exonerating Miller, when they were prosecuted in a state court. As witnesses in this case, they explained their former testimony by saying that Miller promised to pay their fines if they would relieve him from blame, and worked upon their sympathy by telling them he already had one sentence of 3½ years.

[12] The indictment is signed by the assistant district attorney in his own name only, and this is said to be insufficient. We are aware of no statute or inflexible practice requiring that an indictment should be signed at all by the district attorney. See 14 R. C. L. p. 168, § 17. It would seem to be sufficiently authenticated by being presented by the grand jury in open court, even if it were not also indorsed "A true bill" over the signature of the foreman. True, the statute (Comp. St. § 1296) requires that prosecutions be conducted by the district attorney; but section 1420 provides for assistants, and there seems to be nothing to limit their authority to act in the place of the district attorney.

[13] There was no substantial issue in the case other than as to the credibility of Cutler and Hapner. The police officers who made the arrest, having some experience in these matters, testified that the articles being loaded on the truck were whisky and alcohol; this was sufficient to go to the jury on that issue. It was undisputed. Every necessary element of the precedent conspiracy and of possession by Miller was shown. It would have been permissible for the judge to tell the jury that, if they believed the testimony of Cutler, it was their duty to convict Miller on the first two counts. Horning v. Dist. of Columbia, 254 U. S. 135, 41 Sup. Ct. 53, 65 L. Ed. 185. With this

view of the record, the numerous grounds of error alleged, all of which we have carefully examined, have no substance. It is not necessary to go over them in detail.

[14] Upon the count for maintaining a nuisance, the issue of fact involved was fairly and correctly submitted to the jury. Under the old internal revenue law it became a familiar rule that, while making a single sale was not of itself engaging in the retail liquor business, yet proof of the making of a single sale might be sufficient proof to justify the jury in finding that the one who made the sale was engaged in that business. Bailey v. U. S., 170 C. C. A. 156, 259 Fed. 88. The analogy clearly applies to section 21 of the National Prohibition Act. One act of possession or sale in a place does not necessarily and of itself constitute the maintaining of that place for the forbidden purposes; but proof of such single act, under some surroundings and circumstances, will support a jury in finding that it was so maintained. The record puts this case in the latter class. It is a fair inference from the proofs that there had been by Miller some substantial continuity in using this garage as a depot for his intoxicating liquor. Reynolds v. U. S. (C. C. A. 6) 282 Fed. 258.

The complaint that the charge was too argumentative in favor of the government is not well founded. As would be proper in any case, where the legal principles justify it, the court told the jury that, if they found a certain state of facts, that finding would support a verdict against the respondent on the particular element of guilt that was under consideration. In this case, as we have said, even more positive instructions would have been justified.

[15] Again we pass by, without discussion, the propriety of submitting to the jury the liquor seized for the jury's independent determination as to its alcoholic quality. Such submission did no harm. The evidence as to its identity as alcohol and whisky was undisputed.

In this second case (4053) the judgment is affirmed.